# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| LEE HESSELROTH, | Civil No. 11-1417 (JRT/JJK) |
| Plaintiff, | **\*UNDER SEAL\*** |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, *Commissioner of Social Security*, | |
| Defendant. | |

Jennifer G. Mrozik, **HOGLUND, CHWIALKOWSKI & MROZIK, PLLC**, 1781 West County Road B, Roseville, MN 55113, for plaintiff.

Ana H. Voss, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendant.

The Commissioner of Social Security ("the Commissioner")[1] denied Plaintiff Lee Hesselroth's application for disability insurance benefits and supplemental security income under the Social Security Act ("the SSA"). Hesselroth applied for benefits because of a combination of physical and mental health conditions including fibromyalgia, chronic fatigue syndrome, obstructive sleep apnea, type II diabetes, cyclothymic disorder, dysthymic disorder, and attention deficit hyperactivity disorder. On July 24, 2009, Administrative Law Judge David K. Gatto ("the ALJ") found that

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Colvin is automatically substituted as the defendant in this matter for Michael J. Astrue, the former Commissioner of Social Security. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

Hesselroth was not disabled within the meaning of the SSA. After exhausting his administrative remedies,[2] Hesselroth sought judicial review of this decision. The case is now before the Court on the parties' cross-motions for summary judgment. In a Report and Recommendation ("R&R") filed on November 9, 2012, United States Magistrate Judge Jeffrey J. Keyes recommended denying Hesselroth's motion, granting the Commissioner's motion, and affirming the Commissioner's decision. Hesselroth filed an objection to the R&R. This Court reviews the challenged portions of the R&R *de novo* under 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.2. For the reasons stated below, the Court will sustain, in part, Hesselroth's objection to the R&R and will remand Hesselroth's application to the Commissioner.

## BACKGROUND

### I. ALLEGED DISABILITIES

Hesselroth claims a disability onset date of November 1, 2006, when he was fifty-two years old. (Soc. Sec. Admin. R. ("Tr.") 25, 99, Dec. 23, 2011, Docket No. 9.) The R&R outlines the procedural history of this case and provides further information on Hesselroth's background.

Hesselroth alleges that he possesses a variety of physical and mental disabilities. He claims that, mentally and physically, he cannot sustain long periods of work. (Tr. 26.) For example, he alleges that if he works hard on a particular day, it takes several days for

---

[2] Hesselroth sought review by the Appeals Council, which was denied, thus the ALJ's decision is the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

him to recover. (*Id.*) He performs a variety of household tasks, but he claims to neglect a lot of this work, to take "one task at a time[,]" and to stop in the middle of such work in order to take breaks. (Tr. 27, 29-30.) In addition, he alleges that he has good and bad days, making it difficult to plan for activities or to predict his physical and mental energy level on any given day. (Tr. 28-29.)

## II. REPORTS OF TREATING SOURCES

In support of his application for benefits, Hesselroth submitted reports from three of his treating medical professionals: Laurie Radovsky, M.D., Maureen Gluek, Psy.D., and his physical therapist, Jan Hanson. They each completed questionnaires regarding Hesselroth's "ability to do work-related activities on a full-time, day-to-day basis in a regular work setting."

Dr. Radovsky treated Hesselroth from October 2007 through at least April 2009. (Tr. 385, 566.) Dr. Radovsky completed two questionnaires. The first questionnaire dealt with Hesselroth's mental limitations. (Tr. 493-95.) In response to the question, "In your medical opinion, how many hours can your patient regularly work in a day?", Dr. Radovsky responded "0." (*Id.*) As support for this opinion, she first noted Hesselroth's difficulties in making occupational adjustments, such as maintaining concentration and attention. (*Id.*) She also noted that Hesselroth has a limited ability to make performance adjustments, such as following through with complex tasks like computer work and data organization. (*Id.*) Next, she noted that Hesselroth has mild limitations in personal-social adjustments due to his physical fatigue and depression.

(*Id.*)  She finally stated that attention deficit hyperactivity disorder makes it difficult for Hesselroth to focus.  (*Id.*)

The second questionnaire addressed Hesselroth's physical limitations and his ability to do work-related activities.    (Tr. 496-99.)  Again, Dr. Radovsky stated that Hesselroth cannot regularly work any hours in a day.  (*Id.*)  She stated that Hesselroth can stand or walk only a half hour without interruption, for a total of four hours in an eight-hour day, due to his level of fatigue and physical function.  (*Id.*)  For the same reasons, she stated that he can sit only a half hour without interruption, for a total of four hours in an eight-hour day, and that he can lift or carry a total of thirty pounds occasionally and five pounds frequently.  (*Id.*)  She also noted other problems with his physical function, such as an inability to crouch or stoop.  (*Id.*)  Finally, she noted that Hesselroth has "severe intermittent fatigue – difficult to predict when he will have good days and bad days." (*Id.*)

Dr. Gluek also completed a questionnaire for Hesselroth.  She completed the questionnaire in May 2009 and noted that she began treating Hesselroth in April 2008. (Tr. 620.)  The questionnaire dealt with Hesselroth's mental limitations.  (Tr. 618.)  Like Dr. Radovsky, Dr. Gluek stated that Hesselroth can regularly work only "0" hours in a day.  (*Id.*)  As support, she noted his extreme difficulties in areas such as dealing with work stresses.  (*Id.*)  She stated that Hesselroth's symptoms of pain, fatigue, and depression are anywhere from moderate to extreme and that he has difficulty with tasks involving memory, work retrieval, articulation, and organization of thoughts.  (*Id.*)  She noted that his tolerance for stress (physically or psychologically) decreases as his

symptoms increase. (*Id.*) She also stated that, as his symptoms increase, his ability to remember and keep track of instructions and tasks drops significantly. (Tr. 619.) She further stated that as his depression symptoms increase, which is especially noted during the months of October through March or April, he becomes so depressed that he is unable to motivate himself to do things that would be useful. (*Id.*) In addition, she claimed that Hesselroth has problems with maintaining his physical appearance as his depressive symptoms increase and that "while he can behave in an emotionally stable manner, his ability to be stable emotionally drops significantly when he has episodes of symptom breakthrough periods." (*Id.*) She further stated that Hesselroth has attention deficit without hyperactivity, which severely limits his ability to concentrate, to organize his thoughts, to problem solve, to make decisions, and to complete tasks in a timely manner. (*Id.*) She noted that this problem interferes with his ability to stay on task and/or to re-engage in interrupted activity. (*Id.*)

Finally, Hesselroth's physical therapist, Jan Hanson, submitted reports regarding the effects of Hesselroth's fibromyalgia and chronic fatigue. She stated that Hesselroth's standing and walking are affected by his impairments such that he can stand and walk a total of four hours per day, and for only a half hour without interruption, during an eight-hour workday. (Tr. 485-88.) She stated that he can sit for one hour without interruption, for a total of four hours during an eight-hour workday. (*Id.*) She further noted that he can lift and carry only fifty pounds and has other physical limitations. (*Id.*; *see also* Tr. 489-92.) In addition, she stated that Hesselroth's impairments are likely to cause good days and bad days, that he needs to take unscheduled breaks during an average

eight-hour day, and that he must be able to shift positions at will from sitting, standing, or walking. (Tr. 489-92.)

## III. ADMINISTRATIVE DECISION

The ALJ issued his opinion on July 24, 2009. (Tr. 21.) In it, the ALJ discounted the opinions of Dr. Radovsky, Dr. Gluek, and Jan Hanson in a variety of respects. The ALJ followed a five-step sequential analysis to determine whether Hesselroth is disabled, considering (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant has sufficient residual functional capacity ("RFC") to return to his past work; and (5) whether the claimant can do other work existing in significant numbers in the regional or national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). A "listed impairment" is an impairment set out in SSA regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). A claimant is considered disabled if he suffers from a listed impairment or a disorder that is the medical equivalent of a listed impairment. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii), 404.1526, 416.926. In addition, a claimant is considered disabled if he lacks the RFC to conduct work on a sustained basis due to his impairments. *Id.* §§ 404.1545, 416.945.

In accordance with this five-step analysis, the ALJ first considered whether Hesselroth is engaged in substantial gainful activity. The ALJ determined that Hesselroth had not engaged in such activity since November 1, 2006. (Tr. 15.)

Second, the ALJ considered whether Hesselroth has a medically determinable impairment that is severe or a combination of impairments that is severe. *See* 20 C.F.R. § 404.1520(c), 416.920(c). The ALJ found that Hesselroth has severe impairments of depression, dysthymic disorder, attention deficit hyperactivity disorder, and seasonal affective disorder. (*Id.*) The ALJ also concluded, however, that Hesselroth's conditions of fibromyalgia and chronic fatigue syndrome are not severe because they do not require treatment for twelve or more months or present "even minimal limitations" on Hesselroth. (Tr. 16.) The ALJ also appeared to find that Hesselroth's conditions of a sleep disorder and diabetes are not severe. (*See id.*)

Third, the ALJ considered whether Hesselroth's impairment or combination of impairments meet or medically equal the criteria of a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 16.) Specifically, the ALJ considered whether Hesselroth meets Listing 12.04, Affective Disorders. (*Id.*) The ALJ found that Hesselroth does not meet the "B criteria" of the listing because his impairment does not result in at least two of the following: marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. (*Id.*)

In support of this finding, the ALJ determined that Hesselroth has only mild restrictions in his activities of daily living. (*Id.*) The ALJ supported this conclusion based on reports drawn from Hesselroth, Hesselroth's wife, and Dr. Craig S. Barron, who conducted a psychological consultative examination of Hesselroth. For example,

Dr. Barron reported that Hesselroth cooks, sweeps, mops, and vacuums on a weekly basis. (*Id.*; *see also* Tr. 349.) Dr. Barron also reported that Hesselroth shops daily,[3] watches television, works on a computer, reads, occasionally plays a video game, enjoys photographs, and occasionally goes out to eat and gets together with friends. (Tr. 16; *see also* Tr. 349.) In addition, Dr. Barron reported that Hesselroth spends four hours a week helping his friend build and design things. (Tr. 16 (citing Tr. 349).)[4] According to the ALJ, Hesselroth's wife reported that Hesselroth walks a dog and works on art projects on a daily basis. (*Id.* (citing Tr. 150.)[5] She also noted that he prepares full meals in the evening and is able to do lawn work. (*Id.* (citing Tr. 151.)[6] In addition, Hesselroth reported that is able to perform household repairs. (*Id.* (citing Tr. 131).) Hesselroth also stated that his hobbies include woodworking and bicycling, and indicated that he is able

---

[3] There are other indications in the record that Hesselroth shops but not on a daily basis. (*See, e.g.*, Tr. 132, 152, 172, 184.)

[4] It is unclear from Dr. Barron's report whether these four hours are consecutive. Hesselroth reported during the administrative hearing that he would spend anywhere from fifteen minutes to a couple of hours helping his friend organize and talking to him. (Tr. 30-31.) His friend later died. (Tr. 31.)

[5] Hesselroth's wife reported these activities under the category of "daily activities" but did not explicitly state that he conducts these activities on a daily basis. (Tr. 149-50.) She also noted that she helps to care for the dog. (Tr. 150.)

[6] It is unclear from this form what type of lawn work he completes. (*See* Tr. 151.) Also, Hesselroth's wife reported that he makes dinner approximately three to four days a week and lunch and breakfast every day. (*Id.*)

to go fishing. (*Id.* (citing Tr. 133).)[7]  Based on these reports, the ALJ found that Hesselroth has only mild restrictions in his activities of daily living.

In the area of social functioning, the ALJ found that Hesselroth has moderate difficulties. (Tr. 17.)  The ALJ noted that Hesselroth has been described during a doctor's visit as well groomed, appropriately attired, and having good hygiene. (*Id.* (citing Tr. 293).)  Hesselroth has also been noted during a doctor's visit to appear cooperative. (*Id.* (citing Tr. 297).)  The ALJ found that Hesselroth is able to shop and go out to eat and is able to go out in public and tolerate at least superficial interactions with others.  The ALJ further noted that Hesselroth's wife indicated that Hesselroth gets along with authority figures. (*Id.* (citing Tr. 155).)[8]  For these reasons, the ALJ determined that Hesselroth has moderate difficulties in social functioning.

Regarding concentration, persistence, or pace, the ALJ found that Hesselroth has only moderate difficulties.  He concluded, on an unclear basis, that Hesselroth does not have difficulty in this area when pursuing tasks that he enjoys. (*Id.*)[9]  He further found that Hesselroth watches television without reported concentration difficulties. (*Id.* (citing

---

[7] Hesselroth stated that he performs woodworking and bicycles but noted that his ability to conduct these activities "depends on how distracted I get by other things I come across as I am working" and that he finds it "hard to keep focused on one thing." (Tr. 133.)

[8] Hesselroth's wife also indicated that he has interaction with people outside the family for two to three hours a week, including visits to doctors and therapists, and that he often withdraws socially and does not feel up to interacting with others. (Tr. 154.)

[9] There are indications that Hesselroth is not always able to follow through on activities he enjoys, however.  For example, Hesselroth stated that he becomes distracted when performing his hobbies, (Tr. 133), and that he often does not "remember having decided to look into things that seemed interesting at an earlier time[,]" (Tr. 136).  He also reported that even "if wonderful things came to my life I wouldn't have the energy to enjoy them." (Tr. 406.)

Tr. 153).)[10]   He noted, based on the conclusion of Dr. Barron, that Hesselroth's intelligence is average.  (*Id.* (citing Tr. 348).)   He also pointed out that Hesselroth demonstrated adequate task orientation, cooperation, motivation, and efforts during a one-time mental status examination conducted by Dr. Barron.  (*Id.* (citing Tr. 348).) Based on these factors, the ALJ found only moderate difficulties in Hesselroth's concentration, persistence, and pace.

In addition, the ALJ found that Hesselroth had no episodes of decompensation because he was not hospitalized, he was able to leave his home, and he did not leave a work-like setting due to psychologically-based symptoms.  (*Id.*)  The ALJ determined that the "B criteria" of the affective disorders listing was therefore not satisfied.  (*Id.*) Finally, the ALJ found no evidence that Hesselroth meets the "C criteria" of the affective disorders listing.  (*Id.*)  For all of the reasons outlined above, the ALJ found that Hesselroth's impairment or combination of impairments does not meet a listed impairment or medically equal the criteria of a listed impairment.

Fourth, the ALJ determined Hesselroth's residual functional capacity.  (Tr. 18.) The ALJ concluded that Hesselroth has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to unskilled work; brief and superficial contact with the public; and no rapid or frequent changes in work routine due to reduced stress tolerance.  (*Id.*)  In determining the RFC, the ALJ

_____

[10] Hesselroth's wife noted that Hesselroth watches a lot of TV every day and that he has more often conducted "passive activities, like TV" and "finishe[d] fewer projects" since his condition worsened.  (Tr. 153.)  Also, Hesselroth indicated in one record that, for at least some period of time, he had trouble watching television due to his fatigue.  (Tr. 285.)

credited the opinion of Dr. Barron, who stated that Hesselroth is able to concentrate on, understand, remember, and carry out routine, repetitive three-to-four-step tasks and instructions, handle brief and superficial contact with co-workers and the public, withstand work-related stresses, attend work regularly, rapidly perform routine repetitive activities, meet production requirements, and relate to others. (*Id.*)[11]

The ALJ did not place significant weight on the opinion of Dr. Radovsky in determining Hesselroth's RFC because Dr. Radovsky "believes that [Hesselroth] is unable to work even a single hour per day." (*Id.*) The ALJ stated, "The claimant's activity level, including the several hours per week he spends helping a friend design and build things, sharply contrasts the individual portrayed by Dr. Radovsky." (*Id.*) The ALJ did not place significant weight on the opinion of Dr. Gluek for similar reasons. The ALJ opined, "The extreme degree of limitation identified by Dr. Gluek is not supported by objective findings in the record. Additionally, the claimant, as just noted, is active and has attention enough to work with his friend." (*Id.*) The ALJ also discredited the opinion of Hanson because she is not an accepted medical source. (*Id.*)

---

[11] The ALJ also referenced the opinions of the state agency medical sources. On September 21, 2007, Dr. Sandra Eames, a state agency physician, reviewed Hesselroth's social security disability file and stated that Hesselroth's physical conditions are nonsevere. (Tr. 344.) Another state agency physician, Dr. Aaron Mark, affirmed Dr. Eames's opinion on April 28, 2008. (Tr. 419-21.) On October 19, 2007, a state agency psychologist, Dr. Thomas Kuhlman, opined that Hesselroth has an organic mental disorder and personality disorder, causing moderate limitations in daily activities, mild limitations in social functioning, and moderate limitations in concentration, persistence, or pace. (Tr. 364.) He also stated that Hesselroth can perform routine, repetitive, three-to-four-step tasks with adequate persistence and pace, with brief and superficial contact with coworkers and the public and ordinary supervision. (Tr. 370.) Dr. R. Owen Nelsen affirmed Dr. Kuhlman's opinion on April 25, 2008. (Tr. 418.)

The ALJ further determined that Hesselroth's statements about the intensity, persistence, and limiting effects of his symptoms are not credible to the extent that they are inconsistent with the RFC determination. (Tr. 19.) In addition, the ALJ determined that the opinions of Hesselroth's wife are not entitled to much weight because she is not an accepted medical source and has an incentive to make statements endorsing Hesselroth's application. (*Id.*)[12]

After making these determinations, the ALJ determined that there are jobs in significant numbers in the national economy that Hesselroth can perform. (Tr. 20.) He made this determination based on the testimony of the vocational expert. During the administrative hearing, the ALJ asked the vocational expert a hypothetical question about the type of work a person with the following characteristics could perform: a man between the ages of eighteen and fifty years old; impairments of Attention Deficit Disorder or ADHD, dysthymic disorder, depression not otherwise specified, seasonal affective disorder, chronic fatigue syndrome, fibromyalgia, diabetes, and chronic sinusitis; and who is limited to unskilled work with brief and superficial contact with the public, no rapid or frequent changes in work routine due to decreased stress tolerance, and light work with respect to the time on feet and lifting. (Tr. 32-33.) The vocational expert determined that there are jobs available in the local economy that meet these restrictions. (*Id.*) The vocational expert said that jobs are not available, however, if this worker is unable to tolerate stress or changes in work routine, understand, remember, or

---

[12] The ALJ also relied on numerous statements made by Hesselroth and his wife in reaching his decision, however.

carry out even simple instructions, or interact appropriately. (Tr. 33.) In addition, the vocational expert noted that if someone is absent from work two or more times a month due to symptoms, it would typically preclude that person's competitive employment. (*Id.*) The ALJ determined, based on the vocational expert's testimony, that there are jobs in significant numbers in the national economy that Hesselroth can perform. (Tr. 20.)

## ANALYSIS

## I.  STANDARD OF REVIEW

### A.  Definition of Disability

"The Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability." *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992); *see also* 42 U.S.C. § 1382(a). The claimant has the burden of persuasion to prove that he is qualified for social security benefits. *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)) (describing the burdens of persuasion and production under the SSA)).

"Disability" under the SSA means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be eligible for benefits, an individual's impairments must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.*

§§ 423(d)(2)(A), 1382c(a)(3)(B). As noted above, the Commissioner must follow a five-step process to determine if a claimant has a disability.

### B.     Substantial Evidence on the Record as a Whole

The Court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence on the record as a whole. *Id.* § 405(g); *Minor v. Astrue*, 574 F.3d 625, 627 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Reweighing the evidence is not permitted. *Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997). Therefore, even if a claimant's impairments support a claim for disability insurance benefits, the Court must affirm if there is substantial evidence to support the Commissioner's conclusion to the contrary. *See id.* This Court cannot reverse the Commissioner's decision "merely because substantial evidence exists in the record that would have supported a contrary outcome." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). However, "[t]he substantial evidence test . . . requires more than a mere search of the record for evidence supporting the [Comissioner]'s finding; review of the [Comissioner]'s decision must also take into account whatever evidence in the record fairly detracts from its weight." *Brock v. Sec'y of Health & Human Servs*, 791 F.2d 112, 114 (8th Cir. 1986).

## C. Treating Sources' Opinions

When determining whether a claimant is disabled, "the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting C.F.R. § 404.1527(b)). Medical opinions are statements from acceptable medical sources "that reflect judgments about the nature and severity of [the claimant's] impairment(s)," including the claimant's symptoms, diagnosis, and prognosis, what the claimant can still do despite her impairment(s), and the claimant's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2).

Generally, the medical opinion of a treating source must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (alteration and internal quotation marks omitted) (citing 20 C.F.R. § 404.1527(d)(2)). The weight given to a medical opinion is governed by several factors including the examining relationship, the treatment relationship, the consistency of the opinion with the record as a whole, and the source's specialization. *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003). SSA regulations call for a court to give greater weight to treating sources where there is long-term and frequent contact with the claimant. *Id.* "When the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment, [the court] will give the source's opinion more weight than [it] would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(c)(2)(i).

The Commissioner can reject a treating source's opinion when, by looking at the record as a whole, there is substantial evidence to discount the opinion's validity. *Pope v. Bowen*, 886 F.2d 1038, 1041 (8th Cir. 1989). A treating physician's opinion is also not entitled to controlling weight where it is conclusory, *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991), where other medical assessments are supported by better or more thorough medical evidence, or where the physician renders inconsistent opinions that undermine her credibility, *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). Furthermore, while a treating source's opinions may be entitled to controlling weight on medical matters, her opinion does not control the issue of whether a claimant is "disabled" or "unable to work," which is an issue reserved for the Commissioner. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). "The ALJ [also] bears the primary responsibility for determining a claimant's RFC." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010); *see also* 20 C.F.R. § 404.1546(c); 20 C.F.R. § 404.1527(d)(2)-(3).

If the Commissioner limits the weight of a treating source's opinion, the Commissioner "must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch*, 201 F.3d at 1013 (quoting 20 C.F.R. § 404.1527(d)(2)). Furthermore, because a social security hearing is a non-adversarial proceeding, the Commissioner has a duty to fully develop the record independent of the claimant's burden in the case. *Ellis*, 392 F.3d at 994. This duty may include re-contacting a physician for additional information. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004); *Snead v. Barnhart*, 360 F.3d 834, 838-39 (8th Cir. 2004). The duty to

re-contact a physician only arises, however, if a crucial issue is undeveloped. *Ellis*, 392

F.3d at 994; *Stormo*, 377 F.3d at 806.

## II.    REMAND

### A.    Treating Sources' Opinions

The Court finds that the ALJ erred in finding that the opinions of Hesselroth's

treating sources are not supported by the record without seeking further information. *See*

*Stormo*, 377 F.3d at 806; *Cox v. Barnhart*, 345 F.3d 606, 608-10 (8th Cir. 2003).

Specifically, the ALJ should not have discounted the treating sources' opinions regarding

Hesselroth's impairments and his RFC without additional information. *See Leckenby*,

487 F.3d at 632; *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (holding that "a

claimant's [RFC] is a medical question").[13]   Accordingly, the Court will remand this

matter for reconsideration of the treating sources' opinions.

The ALJ discounted the opinions of Drs. Radovsky and Gluek in large part due to

their responses of "0" to the question, "In your medical opinion, how many hours can

your patient regularly work in a day?"  This question was placed after an introductory

---

[13] "Although the ALJ bears the primary responsibility for assessing a claimant's [RFC] based on all relevant evidence, a claimant's [RFC] is a medical question." *Hutsell*, 259 F.3d at 711.  "To properly determine a claimant's [RFC], an ALJ is therefore required to consider at least some supporting evidence from a [medical] professional." *Id.* at 712 (internal quotation marks omitted).

paragraph that states, "At issue is your patient's ability to do work-related activities on a full-time day-to-day basis in a regular work setting."[14]

The Court agrees with the ALJ that, given one reading of this question, the record does not support a response that Hesselroth could work zero hours in any given day.[15] Hesselroth regularly conducts certain activities, such as preparing breakfast and lunch, which indicates that he has the capacity to conduct at least some types of work under certain circumstances. If Drs. Radovsky and Gluek intended to state that Hesselroth lacks the capacity to conduct any work, the ALJ would be justified in discounting their opinions as unsupported and unreliable. *See, e.g.*, *Owen v. Astrue*, 551 F.3d 792, 799 (8th Cir. 2008) ("[Claimant]'s activities of daily living do not reflect the physical limitations found by [the doctor].").

However, the Court finds it unlikely that Drs. Radovsky and Gluek meant to imply that Hesselroth is unable to conduct any type of work in any setting, for even a single hour per day. Rather, the Doctors were likely responding – as directed – to Hesselroth's "ability to do work-related activities on a full-time day-to-day basis in a regular work setting." It is thus possible that Drs. Radovsky and Gluek would find Hesselroth able to conduct work in some settings with a certain level of flexibility, but believe he is incapable of consistently performing work on a full-time schedule in at least certain work

---

[14] Dr. Gluek underlined this sentence, showing that she clearly considered it when rendering her opinion.

[15] As noted above, the ALJ discounted Dr. Radovksy's opinion because, he alleged, Dr. Radovsky stated that Hesselroth is "unable to work even a single hour per day." (Tr. 18.) He discounted Dr. Gluek's opinion for similar reasons.

settings. Given the ambiguity in the question asked and the answers given, the Court finds that the ALJ should have inquired further of Drs. Radovsky and Gluek before discounting their opinions as too extreme and unsupported by the record.

Depending on the ultimate conclusions of Drs. Radovsky and Gluek about Hesselroth's impairments and capacity, the Court is skeptical that their opinions will be inconsistent with the record.[16] The record is replete with documentation of Hesselroth's fatigue, lack of motivation, depression, and other physical and mental symptoms causing him to have difficulty carrying out activities on a consistent or sustained basis. (*E.g.*, Tr. 285, 302, 383, 408, 411, 415, 566.) For example, the record often indicates that Hesselroth needs to rest between projects and has significant difficulty with his energy level. (*E.g.*, Tr. 576-77, 601.) As the R&R outlines, there are times when Hesselroth's level of physical and mental function seem to demonstrate improvement. Indeed, Hesselroth admits that his energy level and symptoms are often varying and unpredictable. (Tr. 142.) However, it appears that certain improvements occurred while Hesselroth was still experiencing other symptoms and that these improvements were at least sometimes temporary in nature.[17] (*E.g.*, Tr. 293, 311, 319, 320, 323, 327, 383, 394,

---

[16] As the Magistrate Judge explained, the record does not support the ALJ's finding that Hesselroth was not treated for chronic fatigue or fibromyalgia for twelve months or longer. (R&R at 26.) Accordingly, the ALJ erred in using this rationale as a basis for finding that these alleged limitations are not severe or for discounting treating sources' opinions about these limitations.

[17] *See Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009) (holding that a claimant with erratic psychological symptoms whose medication helped control her condition was entitled to benefits); *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 649 (8th Cir. 2004) (holding that a claimant may possess a disability if his symptoms are sometimes controlled but regularly recur).

402, 428, 472, 569, 571, 573, 575, 576-77, 603, 610.)   Thus, there appears to be significant evidence that supports at least some of the treating sources' opinions. Specifically, it appears that it would not be unreasonable for a treating physician to conclude that, even though Hesselroth could sometimes complete work under certain conditions, he is unable to work on a day-to-day basis in a normal work environment due to the unpredictability of his symptoms and his inability to consistently complete planned activities.

The ALJ relies heavily on Hesselroth's completion of certain tasks, such as cooking and cleaning, to show his lack of limitations and his capacity to work full-time. Largely on this basis, the ALJ concluded that Hesselroth could, for example, avoid being absent from work two or more times a month.[18]  The completion of some household and other routine tasks, however, does not necessarily translate into the ability to hold full-time employment.  *See Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) ("[T]o find a claimant has the [RFC] to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." (internal quotation marks omitted)).

Indeed, the Court finds that the ALJ's description of Hesselroth's activities, impairments, and level of function is not entirely consistent with the record.   For

_____

[18] As noted above, the vocational expert testified that jobs are not available if a worker is absent from work two or more times a month due to symptoms.   Nonetheless, the ALJ determined that there are jobs in significant numbers in the national economy that Hesselroth can perform.

example, the ALJ relied heavily on Dr. Barron's statement that Hesselroth spent four hours a week helping his friend design and build things. However, there is no indication of whether these four hours were consecutive, where the work was completed, or the number of breaks that Hesselroth took when completing these tasks. These four hours of activity do not in and of themselves demonstrate that Hesselroth can sustain full-time employment. *See Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998) (finding that a claimant was disabled even though she was able to occasionally engage in modest daily activity).

The ALJ also selectively noted certain aspects of records that supported Hesselroth's capacity while ignoring, without explanation, parts of the same records that detracted from that apparent capacity. For example, the ALJ pointed out that Hesselroth performs woodworking and bicycles without noting that, in the same form, Hesselroth stated that his ability to conduct these activities "depends on how distracted I get by other things I come across as I am working" and that he finds it "hard to keep focused on one thing." The ALJ noted that Hesselroth's wife stated he gets along with authority figures, but did not point out that she stated in the same form that Hesselroth often withdraws from interacting with others. The ALJ noted that Hesselroth watches television without reported concentration difficulties, but failed to note that there are no indications that Hesselroth does **not** become distracted when watching television or explain how his ability to watch television would translate into the capacity to concentrate for prolonged

periods of time in a work setting.[19]  Indeed, Hesselroth's wife stated, in the same record

cited by the ALJ to support Hesselroth's concentration level, that Hesselroth has

increasingly engaged in "passive activities, like TV" instead of finishing projects.  Based

on the current record, and without further information from Drs. Radovsky and Gluek,

the Court finds that the ALJ erred in discounting their opinions as inconsistent with the

record.[20]

    The Court also finds that, based on the current record, Dr. Barron's report was

insufficient to discount the treating sources' opinions.   Dr. Barron's report was a

psychological evaluation from a non-treating source.  "As a general matter, the report of a

consulting physician who examined a claimant once does not constitute 'substantial

evidence' upon the record as a whole, especially when contradicted by the evaluation of

the claimant's treating physician."  *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000)

(alteration and internal quotation marks omitted).  Furthermore, SSA regulations note that

claimants with certain disabilities

> may commonly have [their lives] structured in such a way as to minimize
> [their] stress and reduce [their] symptoms and signs.  In such a case, [they]
> may be much more impaired for work than [their] symptoms and signs
> would indicate.  The results of a single examination may not adequately

---

[19] Also, as noted above, Hesselroth indicated in one record that he has trouble watching
television due to his fatigue.

[20] Similarly, it is unclear on what basis the ALJ disregarded the conclusions of Hanson,
the physical therapist.  Although Hanson is not an acceptable medical source, medical sources
like physical therapists are entitled to consideration if their opinions are reliable.  *See Lacroix v.
Barnhart*, 465 F.3d 881, 886-87 (8th Cir. 2006); *Castro v. Barnhart*, 119 F. App'x 840, 842
(8th Cir. 2005); *see* 20 C.F.R. § 404.1513(d).  Here, the ALJ noted that Hanson was not an
acceptable medical source but gave no other reason for failing to credit her opinions regarding
Hesselroth's limitations.

describe [their] sustained ability to function. It is, therefore, vital that [the Commissioner] review all pertinent information relative to [their] condition, especially at times of increased stress.

20 C.F.R. pt. 404, subpt. P, App. 1, 12.00(E). The Court finds that Dr. Barron's report, which, among other conclusions, indicates Hesselroth's adequate task orientation, cooperation, motivation, and effort based on a one-time mental status examination, may not demonstrate Hesselroth's long-term or sustained ability to complete such tasks.[21] The Court will not conclusively decide this issue, however, and will allow the Commissioner to attempt to obtain further descriptive information regarding Hesselroth's impairments and ability to function in a work environment.

## B.     Basis for Remand

The Court remands this case to the Commissioner to obtain further information from the treating sources regarding Hesselroth's limitations and capacity. This information should include a clarification regarding the number of hours per day the treating sources believe that Hesselroth is capable of working and, if Hesselroth might be capable of working full-time, in what type of setting and under what circumstances. Obtaining this information may change the Commissioner's view of Hesselroth's RFC and the questions that the Commissioner poses to the vocational expert regarding

---

[21] Similarly, the Court finds that the opinions of state agency reviewing doctors were insufficient to reject the opinions of the treating sources, based on the current record. *See Cantrell*, 231 F.3d at 1107.

Hesselroth's ability to sustain employment.[22]  The Court will thus remand this matter to the Commissioner for consideration of whether Hesselroth's treating sources' opinions are due controlling weight and, if so, the effect of these opinions.  *See, e.g.*, *Coleman v. Astrue*, 498 F.3d 767, 771-73 (8th Cir. 2007) (remanding for more medical information relevant to a disability claim).[23]

The Court will remand this case not because it has reweighed the evidence, but because the record before the ALJ was insufficient to support the ALJ's conclusion.  The Court is mindful that the Eighth Circuit has repeatedly cautioned that it is not the job of the reviewing court to reweigh the evidence or substitute its own judgment for that of the Commissioner.  *See Stephens v. Shalala*, 46 F.3d 37, 38-39 (8th Cir. 1995).  The Court thus declines to determine whether Hesselroth's symptoms disqualify him for competitive employment on the current record.  *See Lauer v. Apfel*, 245 F.3d 700, 706 (8th Cir. 2001) (remanding for determination of complex medical issues that could be resolved only with professional assistance).  Instead, the Court will remand this case for further development of the record on the issues and for reconsideration of the severity of Hesselroth's impairments, whether Hesselroth possesses or medically equals the criteria of a listed

---

[22] The Court declines to determine Hesselroth's RFC without more medical information regarding Hesselroth's ability to sustain employment.

[23] In light of reviewing the evidence as a whole and reconsidering the treating sources' opinions, the Commissioner may come to a different conclusion regarding the credibility of Hesselroth's subjective complaints.  *See Todd-Smith v. Astrue*, No. 12-2091, 2013 WL 49715, at *1 (8th Cir. Jan. 4, 2013); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The Court notes that the Commissioner may not discount a claimant's credibility solely because the objective evidence does not fully support his subjective complaints, but may discount credibility based on inconsistencies in the record as a whole.  *Ellis*, 392 F.3d at 996.

impairment, and whether Hesselroth has the RFC to sustain full-time competitive employment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **SUSTAINS in part** Plaintiff's objections [Docket No. 19] and **ADOPTS in part** and **REJECTS in part** the Report and Recommendation of the Magistrate Judge [Docket No. 16]. Accordingly, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion for Summary Judgment [Docket No. 11] is **DENIED** in so far as it requests summary judgment, but **GRANTED** in so far as it requests remand for further proceedings;

2.      Defendant's Motion for Summary Judgment [Docket No. 14] is **DENIED**;

3.      The case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

4.      The parties are to show cause on or before twenty-five (25) days from the date of this Order why the Court should not unseal the Order, and to specify any portion of the Order warranting redaction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  March 27, 2013            _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                     United States District Judge